UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAUREN NICOLE HINSON,
individually and as assignee of
Alisha Danielle King,

    Plaintiff,

v.                                              Case No. 8:23-cv-1766-TPB-SPF

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

    Defendant.
_____/

### ORDER DENYING "PROGRESSIVE AMERICAN INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT"

This matter is before the Court on Defendant "Progressive American Insurance Company's Motion for Final Summary Judgment," filed on January 10, 2025. (Doc. 42). Plaintiff Lauren Nicole Hinson filed a response in opposition on February 12, 2025. (Doc. 55). Defendant filed a reply on February 27, 2025. (Doc. 60). After reviewing the motion, response, reply, court file, and record, the Court finds as follows:

### Background

This case arises from a two-car accident that occurred in Pasco County, Florida. On September 2, 2017, Maria Pizarro was driving southbound on U.S. Route 301 with two passengers, Martin Kaman and Plaintiff Lauren Nicole Hinson. In another vehicle, Alisha King, along with passenger Vanessa Morrell, attempted to cross U.S. Route 301 but failed to yield and caused the cars to collide.

King was a named insured under an auto policy issued by Defendant Progressive American Insurance Company with bodily injury limits of $10,000 per person and $20,000 per accident. On September 4th, Defendant opened a bodily injury claim for Plaintiff and assigned Emily Hattaway, an adjuster in the high exposure loss group, to handle the claim. On September 5th, Hattaway also opened a PIP claim for Morrell and spoke to Pizarro, learning that Pizarro was at the ER being treated for injuries sustained during the crash. Hattaway noted that there was no contact information for Kaman but that she would try to get in touch with him.

On September 6th, Hattaway spoke to Plaintiff's attorney, who explained that Plaintiff suffered two shattered arms and was still in the hospital, and that he would soon provide medical bills along with a settlement demand. On September 7th, another adjustor talked to Pizarro, who indicated she had multiple contusions and potential head and neck injuries. Pizarro also briefly discussed Kaman's injuries.[1]

Hattaway's supervisor reviewed the matter on September 12th, and recognizing that there would be multiple competing claims, he transferred all injury claims to Hattaway for resolution. Over the next few weeks, Hattaway exchanged voicemails and sent letters. On October 11th, Defendant decided to move forward with setting a global settlement conference to attempt to resolve the competing claims, notwithstanding missing medical information from multiple claimants. However, the next day, Plaintiff's attorney told Defendant that he intended to provide a settlement demand for the $10,000 policy limits. On October 24th, Defendant sent out official

---

[1] Although a bodily injury claim was subsequently opened for Kaman, Kaman later clarified that he had only lumbar bruising.

"non-tender" letters informing the claimants that a global settlement conference would be scheduled for November 28, 2025, to resolve the competing claims.

On October 26th, Plaintiff's attorney officially offered to settle the claim for the $10,000 policy limits, explaining that the offer would remain open for 14 days. Another adjuster covering for Hattaway called King to tell her about the demand and inform her that the damages claimed by Plaintiff could exceed policy limits. That adjuster also spoke to Plaintiff's attorney, who explained that Plaintiff would not be attending the global settlement conference since Defendant had more than enough time to evaluate the claims and agree to the settlement offer.

By November 1st, Hattaway admitted she still did not know Morrell's status, but she was aware that Plaintiff's injuries were more severe than those to Pizarro or Kaman. On November 7th, Hattaway discussed Plaintiff's demand with King, who agreed with Defendant's decision not to settle with Plaintiff for policy limits. Plaintiff's demand letter subsequently expired on November 10th.

The global settlement conference took place on November 28th. At the conference, Defendant resolved Pizarro's claim for $4,800, Morrell's claim for $5,000, and set aside $200 for Kaman. Following the conference, Defendant tendered the remaining $10,000 to Plaintiff, but the settlement was rejected. Plaintiff indicated that a lawsuit had already been filed against King by the time of the post-conference offer.

Nearly five years later, in August 2022, the case was tried, and the jury returned a verdict in favor of Plaintiff for $736,651.64. Plaintiff's one-count complaint seeks recovery for third-party insurance bad faith by Defendant. The case was

originally filed in the Sixth Judicial Circuit Court in and for Pasco County, Florida, on March 24, 2023, and removed to this Court on August 7, 2023. (Doc. 1-2). Defendant now seeks summary judgment.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id*.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Though the determination of whether an insurer acted in bad faith generally raises an issue of fact for determination by a jury, the Eleventh Circuit and Florida courts "have granted summary judgment where there is no sufficient evidence from which any reasonable jury could have concluded that there was bad faith on the part

of the insurer." *Pelaez v. GEICO*, 13 F.4th 1243, 1251 (11th Cir. 2021) (quoting *Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1278 (11th Cir. 2021)).  However, if material issues of fact which would support a jury finding of bad faith remain in dispute, summary judgment is unwarranted.  *Id*.

## Analysis

Florida law imposes a duty of good faith on a liability insurer towards its insured.  *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980).[2]  This duty arises from the fact that the insured surrenders to the insurer all control over the handling of the claim, including decisions regarding litigation and settlement, *id.*, and the duty exists to protect insureds from judgments in excess of their policy limits when the insureds "have paid their premiums" and have "cooperat[ed] fully with the insurer in the resolution of claims."  *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 682 (Fla. 2004).

The duty of good faith "obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same."  *Boston Old Colony*, 386 So. 2d at 785.  It further requires the insurer to "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so."  *Id*.  The

---

[2] While Florida law recognizes third-party bad faith actions brought by an injured third party against an insured's liability carrier, *see QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 545-46 (Fla. 2012), the basis for the suit remains a claim that the insurer breached its duty to the insured, resulting in the insured's exposure to an excess judgment.  *Wachovia Ins. Servs., Inc. v. Toomey*, 994 So. 2d 980, 989 (Fla. 2008).

insurer must not only undertake these steps, but must act "diligently, and with the same haste and precision as if it were in the insured's shoes, work[ing] on the insured's behalf to avoid an excess judgment." *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018).

In the multi-claimant context, the duty of good faith also requires insurers to: "(1) fully investigate all claims arising from a multiple claim accident; (2) seek to settle as many claims as possible within the policy limit; (3) minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement; and (4) keep the insured informed of the claim resolution process." *Gen. Sec. Nat. Ins. Co. v. Marsh*, 303 F. Supp. 2d 1321, 1325-26 (M.D. Fla. 2004).

Still, the fundamental inquiry remains "whether, under all of the circumstances, the insurer could and should have settled the claim within the policy limits had it acted fairly and honestly toward its insured and with due regard for his interests." *Berges*, 896 So. 2d at 679. This inquiry looks at the facts of each case and at the "totality of the circumstances." *Id.* at 680. The proper focus of the inquiry is on the actions of the insurer rather than on the actions of the insured, the claimant, or the claimant's attorney. *Pelaez,* 13 F.4th at 1251 n.6, 1254. Thus, when the evidence clearly establishes the insurer acted in bad faith, the insurer may not escape liability merely because the insured or the claimant may have contributed to the failure to settle the claim. *Id.* At the same time, while the *focus* is on the insurer's conduct, the conduct of the insured or the claimant is *relevant* as part of the totality of the circumstance. *Id.* at 1254.

Here, Defendant argues summary judgment is appropriate because there was

no reasonable opportunity to settle Plaintiff's claim. Specifically, Defendant contends that it did not have sufficient information regarding the other claimants' injuries to determine whether a full policy limits tender to Plaintiff, to the exclusion of the other claimants, was warranted. In its view, Hattaway and the other adjustors made consistent, reasonable requests for information but received only limited responses.

In *Aldana v. Progressive American Insurance Co.*, 828 F. App'x 663, 664 (11th Cir. 2020), the Eleventh Circuit Court of Appeals addressed a similar multi-claimant bad faith case and denied summary judgment for the insurer, reasoning:

> [T]he need for haste and diligence was heightened because the Aldanas' claims presented a "ticking financial time bomb and suit [could] be filed at any time." [*Harvey*, 259 So. 3d at 7]. Although [the insurer] did not receive medical records from [a claimant], a reasonable jury could conclude it knew that that [the insured] was clearly at fault, that the Aldanas had suffered severe injuries, and that a judgment well in excess of the policy limits was likely.

*Id.* at 670. The Eleventh Circuit emphasized that the obligations of good faith "are not 'a mere checklist' which, once checked off, will insulate an insurer from liability," and that there was sufficient evidence to support a jury's finding of bad faith. *See id.* at 669-70.

In this case, a reasonable jury could conclude that Defendant did not fulfill its duty to "fully investigate" the claimants' injuries to "minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement." *See Marsh*, 303 F. Supp. 2d at 1325-26. Defendant was aware from the outset that Plaintiff's injuries were significant, the policy limits were minimal, and that its

insured was likely liable for the accident.  In other words, reasonable minds might conclude that the situation presented a "ticking financial time bomb."

Despite this, Defendant failed to obtain detailed information from the other claimants about their injuries in the months following the accident.  Indeed, for weeks at a time, Defendant did not contact the other claimants at all.  Given this lapse in communication with the claimants – each of whom possessed what Defendant itself viewed as vital information – the Court concludes that a reasonable jury could find that Defendant failed to uphold its obligation to act as diligently and hastily as it would if it were in the shoes of the insured.[3]  Defendant's delay in resolving Plaintiff's claim may be explainable, or even justified, but that remains a question best resolved by a factfinder at trial.  The motion for summary judgment is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

1. Defendant "Progressive American Insurance Company's Motion for Final Summary Judgment" (Doc. 42) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 26th day of March, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE

---

[3] This is particularly true where Plaintiff offered to settle for policy limits and gave Defendant two weeks to obtain crucial information pertaining to the other claimants, even though Defendant at that time already had nearly two months to do so.