UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAUREN NICOLE HINSON,
individually, and as assignee of
ALISHA DANIELLE KING,

        Plaintiff,

v.                                                                                  Case No. 8:23-cv-1766-SPF

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

        Defendant.

_____/

**<u>ORDER</u>**

This Florida insurance bad faith lawsuit arises from an automobile accident that occurred on September 2, 2017, involving non-party Alisha King ("Ms. King" or "the insured"), who was insured under a liability policy through Defendant Progressive American Insurance Company ("Defendant"). (Doc. 81 at 1). The Progressive auto policy provided liability coverage limits in the amount of $10,000 per person and $20,000 per occurrence. (*Id.*). There were four potential claims arising from the subject accident, three of which involved non-parties, including Vanessa Morrell, Maria Pizarro, and Martin Kaman. (*Id.* at 2). The fourth claim was asserted by Plaintiff Lauren Nicole Hinson ("Plaintiff"). (*Id.*).

Plaintiff's claim resulted in Florida state court litigation against Ms. King, which proceeded to trial in August 2022. (*Id.*). A verdict was rendered in Plaintiff's favor in the amount of $676,945.51 and placed twenty-five percent fault on another vehicle, reducing the amount entered against Ms. King to $601,459.13 ("Final Judgment"). (*Id.*). On February 10, 2023, a Second Amended Final Judgment was entered that also awarded Plaintiff $112,752.50 in attorney's fees and $22,440.01 in taxable costs related to the state court action.

(*Id.*). Progressive thereafter tendered its $10,000 bodily injury liability limits to Plaintiff. (*Id.*). Ms. King then assigned her rights under her insurance policy with Defendant to Plaintiff who filed the instant insurance bad faith lawsuit against Defendant pursuant to Florida common law.[1]

This case proceeded to trial before a jury that rendered a verdict in Plaintiff's favor, so judgment was entered for Plaintiff and against Defendant.  (Docs. 139, 145).  Now before the Court is Plaintiff's Motion for Entitlement to Attorney's Fees and proposed bill of costs and Defendant's response in opposition.  (Docs. 147, 148, 150).  Also before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for New Trial.  (Doc. 149).  Plaintiff responded in opposition.  (Doc. 153).   Upon due consideration, Plaintiff's motion (Doc. 147) is granted, and Defendant's motion (Doc. 149) is denied.

## I.    Background

On September 2, 2017, Maria Pizarro was driving with two passengers, Plaintiff and Martin Kaman, in Pasco County, Florida when the car was struck by another vehicle driven by Ms. King.  (Doc. 128 at 1, ¶1, 3).  Vanessa Morrell was a passenger in Ms. King's vehicle. (*Id.* at ¶2).  Ms. King was a named insured under an automobile policy issued by Defendant with bodily injury limits of $10,000 per person and $20,000 per accident.  (*Id.* at ¶4).

Defendant was made aware of the accident on September 2nd when King's father reported the potential claims.  (*Id.* at ¶5).  On September 4th, Defendant opened a bodily injury claim for Plaintiff and later assigned Emily Hattaway, an adjuster in the high exposure

---

[1] The case was originally filed in the Sixth Judicial Circuit Court in and for Pasco County, Florida, on March 24, 2023, and removed to this Court on August 7, 2023.

loss group, to handle the claim. (*Id.* at ¶6-7).  On September 5th, Defendant also opened personal injury claims for Pizarro and Morrell.  (*Id.* at ¶8); (Doc. 141-1 at 7).  Then, on September 7th, Defendant opened a bodily injury claim for Kaman. (Doc. 141-1 at 11). Hattaway's supervisor reviewed all the claims on September 12th and transferred all injury claims to Hattaway for resolution.  (*Id.* at 12).

Most of Defendant's work on these claims was done between September 2nd and October 4th.  For Morell's claim, Progressive had a mailing address for her by September 6th and sent her a letter asking for more information about her claim.  (Doc. 141-6).  Having gotten no response, on September 15th, Defendant sent Morrell another inquiry letter after it ran an investigative report for other contact information.  (Doc. 141-9).  Then, on September 19th, Defendant received Morrell's attorney's information and added her name to the claim file, (Doc. 141-1 at 16), but did not reach out until September 27th when Defendant called and left a voicemail for Morrell's attorney, (*id.* at 18).

As to Kaman's claim, Defendant sent him a letter on September 5th and then on September 7th, Pizarro informed Defendant that Kaman had gone to the hospital twice for back injuries and provided Defendant with Kaman's phone number. (*Id.* at 7, 11).  Defendant was able to connect with Kaman via phone the next day who informed Defendant that he had bruises on his back and had only gone to the emergency room once without being admitted. (*Id.* at 11).  He also informed Defendant that he had undergone lumbar surgery over two years previously. (*Id.*).  Defendant's next attempted communication with Kaman was not until September 27th when they called and left him a message. (*Id.* at 18).  Kaman returned Defendant's call the next day and left a message stating that Defendant could reach him at a different number.  (*Id.* at 20).  When Defendant called that number, however, it

3

received a message that the call could not be completed as dialed. (*Id.*). Also on September 28th, Defendant called Pizarro's insurance company and was told that Kaman had not yet qualified for a personal injury claim and Defendant learned that another possible insurer did not have any policies for Kaman. (*Id.* at 19). No other calls were attempted to Kaman at either number. *See generally* (Doc. 141-1).

Pizarro's claim got more attention than Morell or Kaman. Defendant contacted Pizarro or her insurer on September 5th, September 6th, September 7th, September 14th, September 15th, September 19th, September 27th, September 29th, and October 4th. (*Id.* at 4-5, 7-11, 13-15, 18, 20-21); (Doc. 141-5). September 5th, Pizarro told Defendant via text message that she had bruises, a concussion, and neck and back pain but that she was still hospitalized and would contact them when she was released. (Doc. 141-1 at 8). On September 6th, Defendant sent Pizarro a letter and told her to contact Defendant with more information as they had been unable to reach her and also spoke with her insurer who informed Defendant that she was still hospitalized. (Doc. 141-5). On September 7th, Defendant left a message for Pizarro's insurer and spoke with her again, learning that she still had headaches. (Doc. 141-1 at 11). On September 14th, Defendant left another message with Pizarro's insurer and the next day, left Pizarro a message and texted her about obtaining additional information. (*Id.* at 14). On September 19th, Defendant again contacted Pizarro's insurer for information and spoke with Pizarro to explain the limits of King's policy with Defendant. (*Id.* at 15). On September 27th, Defendant was told by Pizarro's insurer that it had not yet received records or bills from Pizarro. (*Id.* at 18). Then, on September 29th and October 4th, Defendant requested photos of Pizarro's vehicle damages from Pizarro's insurer. (*Id.* at 20-21).

Finally, regarding Plaintiff's claim, on September 6th, Hattaway spoke to Plaintiff's attorney, who explained that Plaintiff suffered two shattered arms and was still in the hospital, and that once all medical records and bills were obtained, he would be sending them to Defendant along with a demand. (*Id.* at 10). And, on September 7th, Pizarro confirmed that Plaintiff suffered from two broken arms and added that Plaintiff required surgery on both of her arms and was still in the hospital. (*Id.* at 11). Then, on September 12th, Defendant was updated that Plaintiff was getting out of the hospital soon and, through her counsel, was told that Plaintiff was still undergoing treatment and that the demand would not be sent until Plaintiff had reached maximum medical improvement. (Docs. 141-4, 141-7). And, as relevant to all parties, by September 14th, Defendant had obtained and reviewed the police report. (Doc. 141-1 at 13).

On October 11th, Defendant decided to move forward with setting a global settlement conference to attempt to resolve the competing claims, notwithstanding missing medical information from multiple claimants. (*Id.* at 23). So, on October 16, 2017, Hattaway requested that attorney David Hendricks schedule a global settlement conference. (Doc. 128 at 2, ¶¶ 12-13). On October 24th, Defendant sent out official "non-tender" letters informing the claimants that a global settlement conference would be scheduled for November 28, 2025, to resolve the competing claims. (Doc. 141-16). Two days later, Plaintiff's attorney offered to settle her claim for the $10,000 policy limits, explaining that the offer would remain open until November 10th, and provided Plaintiff's medical bill. (Doc. 141-17).

On October 30th, Hattaway mailed King a copy of the demand and a letter informing King that the damages claimed by Plaintiff counsel exceed the limits of King's policy

coverage. (Doc. 141-18). By November 1st, Hattaway knew Plaintiff's injuries were more severe than those to Pizarro or Kaman though she remained unsure about Morell.

Then, another adjuster called King on November 7th and Plaintiff would not be attending the global settlement conference and would instead rely upon her demand.

On November 7th, Hattaway discussed Plaintiff's demand with King. (Doc. 141-1 at 28-29). During this conversation, Hattaway explained that Defendant had contacted Plaintiff's attorney about moving the date of the global settlement conference to prior to the expiration of the demand, but counsel was unavailable so the date would remain the same. (*Id.*). Based on this discussion, King ultimately agreed with Defendant's decision not to accept Plaintiff's demand and to let it expire on November 10th. (*Id.*). Defendant made no attempts at contacting Morrell, Pizarro, or Kaman between its receipt of Plaintiff's demand and its expiration. *See generally* (Doc. 141-1 at 24-29).

The global settlement conference took place on November 28th as planned. (Doc. 128 at 2). At the conference, Defendant resolved Pizarro's claim for $4,800, Morrell's claim for $5,000, and set aside $200 for Kaman. (*Id.* at 3). Defendant also tendered the remaining $10,000 to Plaintiff, but the offer was rejected as Plaintiff had already filed the state court lawsuit against King. (*Id.*); (Doc. 141-42).

## II. Discussion

### A. Rule 50(b)

Federal Rule of Civil Procedure 50 governs renewed motions for judgment as a matter of law. Fed. R. Civ. P. 50(b). Under Rule 50, a party may move for judgment as a matter of law at the close of evidence and after the jury has returned its verdict as long as the motion is properly renewed. *See* Fed. R. Civ. P. 50(a)–(b). The motion, however, may only be granted

if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (citation and quotation marks omitted). A court must assess whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998) (citation and quotation marks omitted). All evidence, and reasonable inferences drawn from it, must be viewed in the light most favorable to the nonmoving party. *See id.* (citation omitted). "[A]nd the Court may not make credibility determinations or reweigh the evidence." *Bernstein v. Sephora, Div. of DFS Group L.P.*, 182 F. Supp. 2d 1214, 1216 (S.D. Fla. 2002) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L.Ed. 2d 105 (2000)).

Where, as here, the jury returned a verdict, Rule 50(b) authorizes the Court to (1) enter judgment on the verdict, (2) order a new trial, or (3) enter judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). A Rule 50(b) motion may also "include an alternative or joint request for a new trial under Rule 59." *Id.*

It is well settled "that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004) (citations omitted). Consequently, "a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion." *Id.* (citation and quotation marks omitted).

Prior to the case being submitted to the jury, Defendant moved under Rule 50(a) on multiple grounds: (1) that Plaintiff failed to establish that Defendant had a duty to settle her

claim by the time her demand expired; (2) Plaintiff failed to establish that Defendant's bad faith conduct caused Plaintiff's claim not to settle; (3) Plaintiff failed to prove that Defendant had a reasonable opportunity to settle Plaintiff's claim for an amount within policy limits; (4) Defendant's did not act in bad faith by waiting for the global settlement conference; and (5) Plaintiff's theory of liability impermissibly relies upon multiple inferences. (Doc. 132). Those are the sole preserved arguments, and Defendant's instant motion substantively raises all of them. (Doc. 149).

Florida law imposes a duty of good faith on a liability insurer towards its insured. *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). This duty arises from the fact that the insured surrenders to the insurer all control over the handling of the claim, including decisions regarding litigation and settlement, id., and the duty exists to protect insureds from judgments in excess of their policy limits when the insureds "have paid their premiums" and have "cooperat[ed] fully with the insurer in the resolution of claims," *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 682 (Fla. 2004). The duty of good faith "obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." *Boston Old Colony*, 386 So. 2d at 785. It further requires the insurer to "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id.*

"To prevail on a bad-faith claim, a plaintiff must prove (1) bad faith conduct by the insurer, which (2) causes an excess judgment to be entered against the insured." *Martinez v. GEICO Cas. Ins. Co.*, 152 F.4th 1323, 1331 (11th Cir. 2025) (internal quotation marks and

citation omitted). In the multi-claimant context, like here, the duty of good faith also requires insurers to: "(1) fully investigate all claims arising from a multiple claim accident; (2) seek to settle as many claims as possible within the policy limit; (3) minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement; and (4) keep the insured informed of the claim resolution process." *Gen. Sec. Nat. Ins. Co. v. Marsh*, 303 F. Supp. 2d 1321, 1325-26 (M.D. Fla. 2004). "These obligations, however, are not a mere checklist, and an insurer is not absolved of liability simply because it advises its insured of settlement opportunities, the probable outcome of the litigation, and the possibility of an excess judgment." *Martinez*, 152 F.4th at 1331 (internal quotation marks and citation omitted).

"[T]he critical inquiry in assessing bad faith is whether, under the totality of the circumstances, the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Id.* (internal quotation marks and citation omitted). The proper focus of the inquiry is on the actions of the insurer rather than on the actions of the insured, the claimant, or the claimant's attorney. *Pelaez*, 13 F.4th at 1251 n.6, 1254. Thus, when the evidence establishes the insurer acted in bad faith, the insurer may not escape liability merely because the insured or the claimant may have contributed to the failure to settle the claim. *Id.* At the same time, while the focus is on the insurer's conduct, the conduct of the insured or the claimant is relevant as part of the totality of the circumstance. *Id.* at 1254. "Although an insurer's negligence can be relevant to the question of bad faith, negligence is not the standard." *Martinez*, 152 F.4th at 1332 (internal quotation marks and citation omitted). A plaintiff must show that the insurer acted "willfully." *Id.* (internal quotation marks and citation omitted).

9

As a threshold issue, most of Defendant's arguments require a reweighing of the evidence. While Defendant urges the Court to conclude that the totality of its efforts in the claims process were sufficient, this would require rebalancing this evidence which it cannot do. *Bernstein*, 182 F. Supp. 2d at 1216.   The jury was presented with the same evidence and determined that it was insufficient.

Defendant's argument that Plaintiff could not rely upon the failure to change the date of the global settlement conference is also unconvincing.  As Plaintiff notes, "the critical inquiry in assessing bad faith is whether, under the totality of the circumstances, the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Martinez*, 152 F.4th at 1331.   As Defendant's decision to not move the date of the global settlement conference was a circumstance surrounding its handling of Plaintiff's claim, it was relevant to the case.  To the extent that Defendant argues that its decision to not move the global settlement conference was irrelevant because of Plaintiff's and her counsel's conduct, that evidence was also before the jury.  So, to now find that Plaintiff's conduct outweighed Defendant's conduct would be inappropriate for the Court to do. *Bernstein*, 182 F. Supp. 2d at 1216.

Likewise, Defendant's assertion that the jury was required to make multiple and unreasonable inferences to reach its verdict does not have merit.  As Defendant admits, federal procedural rules permit inference stacking. *See Berbridge v. Sam's East, Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) ("Because a federal standard governs our assessment of whether an inference is allowable, we do not apply state-law rules against 'pyramiding' or 'stacking' inferences."); *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) ("According to federal law there is no prohibition against pyramiding inferences;

10

instead all inferences are permissible so long as they are reasonable.").  And, as explained above, the inferences the jury made to reach their verdict were reasonable and therefore not so far-fetched as Defendant argues.

Ultimately, the Court cannot conclude that "there is no legally sufficient evidentiary basis for a reasonable jury to find for" Plaintiff.  *Chaney*, 483 F.3d at 1227.  The jury heard evidence that there was a lack of effort from Defendant to reach any of the other claimants between the time that it received Plaintiff's demand, and the demand expired.  Moreover, Defendant specifically decided not to move the global settlement conference to a date prior to the demand's expiration.  The only reason Defendant provided for not changing the date was Plaintiff's attorney's unavailability, but it never explained why his presence was necessary.  Indeed, neither Plaintiff, her attorney, or Kaman attended the global settlement conference, but it still resulted in a sum for Plaintiff equaling her demand and the total proposed payout to all claimants was within King's policy limits.   Against this backdrop, Plaintiff produced sufficient evidence from which the jury could find that Defendant was the cause of the failure to settle and had a reasonable opportunity to settle it.  Defendant's request for judgment as a matter of law is therefore denied.

### B.  Rule 59

Federal Rule of Civil Procedure 59(a)(1) permits a party to seek from the Court "a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1).  A new trial is warranted where "'the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of

11

evidence or instructions to the jury.'" *Keefe v. Britt's Bow Wow Boutique, Inc.*, 2025 WL 1483009, at *8 (11th Cir. May 23, 2025) (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940)).  Misconduct by counsel may also justify a new trial, *see McWhorter v. City of Birmingham*, 906 F.2d 674, 676–78 (11th Cir. 1990), as may a combination of these or other trial defects, *see Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1504–05 (11th Cir. 1985).

Like Rule 50 motions, such relief is not to be granted lightly. "'Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence.'"  *Keefe*, 2025 WL 1483009, at *8 (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)). Therefore, permitting a new trial based on an evidentiary ruling should occur "only in cases where substantial prejudice exists." *Id.* (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1259 (11th Cir. 2004)).  A district court has broad discretion in determining whether a new trial is warranted in a particular case. *Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 644 (11th Cir. 1990). The decision to alter or amend a judgment pursuant to Rule 59(e) is committed to the sound discretion of the trial judge. *American Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985).

When it comes to objectionable evidence, "[o]nce the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b).  A court "rules definitively when it uses 'decisive' (as opposed to equivocal or contingent) language to deny or overrule a motion in limine."  *United States v. Valdez*, 2023 WL 355091, at *3 (11th Cir. Jan. 23, 2023) (quoting *United States v. Wilson*, 788 F.3d 1298, 1313 (11th Cir. 2015)).  Put another way, "if

12

the court's ruling is tentative or without prejudice, the court has not ruled 'definitively,' and 'the objecting party must renew its objection at trial to preserve a claim of error for appeal.'" *Race v. Smith*, 2022 WL 3649650, at \*3 (11th Cir. Aug. 24, 2022) (quoting *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1297 (11th Cir. 2021)).

Defendant asserts that there was insufficient evidence to establish that it had a reasonable opportunity to settle Plaintiff's claim before the demand expired, (Doc. 149 at 14-17), but this is untrue. While Defendant attempted to acquire the other claimants' medical information prior to Plaintiff's demand being received, there were no attempts at communication with Morrell, Kaman, or Pizarro between the time Defendant received the demand and its expiration. Defendant only attempted to reach Morrell's attorney once before it received Plaintiff's demand and did not reach out again until November 13. Similarly, there were no attempts at contacting Kaman from September 28 to November 15. While the number Kaman left for Defendant on September 28 ended up being incorrect, there is no indication that Defendant attempted to contact Kaman on the number at which he had previously been reached. And, for Pizarro, there was no attempt to contact her from September 27 to November 15.

Moreover, Defendant's efforts to determine the existence of other insurance policies and communicating with those companies is undoubtedly an important part of the claims process, but it appears those contacts were not made to garner information on the claimants' medical needs and costs. And, perhaps most telling of all, while Defendant admits that it did not expect to receive sufficient information until the global settlement conference, Defendant still decided not to move it to before the demand's expiration. Defendant's lament of lacking claimant information prior to the demand's expiration after making little effort to obtain it is

untenable.  The jury heard the evidence supporting Defendant's argument, like Plaintiff's refusal to attend a global settlement conference, and concluded that it was insufficient against the slew of contradictory evidence.  The Court sees no reason to unseat the jury's verdict now.  Therefore, the verdict was not against the greater weight of the evidence and Defendant's request for a new trial is denied.

### C.  Plaintiff's Motion for Entitlement to Attorneys' Fees and Costs

The Court now turns to Plaintiff's request for a finding that she is entitled to attorney's fees and expenses.[2]  Florida law applies the so-called "American rule," under which attorney's fees are awarded to a prevailing party only when permitted by statute or contract.  *Durden v. Citicorp Trust Bank*, FSB, 763 F.Supp.2d 1299, 1303 (M.D. Fla. 2011) (quoting *United States v. Pepper's Steel & Alloys, Inc.*, 289 F.3d 741, 742 (11th Cir. 2002) (per curiam) (citation omitted)).  Section 627.428 provides that, if an insured receives a judgment against an insurer, the insurer would be obligated to pay the insured's attorney's fees.  Fla. Stat. § 627.428 (2021).  An assignee of an insured's contractual insurance rights is entitled to recover attorney's fees pursuant to section 627.428 if the assignee prevails on a third-party bad faith claim against the insurer.  *Liberty Mut. Ins. Co. v. Davis*, 412 F.2d 475, 486 (5th Cir. 1969); *see also Kivi v. Nationwide Mut. Ins. Co.*, 695 F.2d 1285, 1288 n.3 (11th Cir. 1983); *Continental Cas. Co. v. Ryan Inc. Eastern*, 974 So. 2d 368, 379 (Fla. 2008).

Although the Florida legislature repealed section 627.428, effective March 24, 2023, courts have consistently held that the repeal does not apply retroactively and affects only

---

[2] Under this Court's local rules, determining post-judgment attorney's fees and costs is a bifurcated procedure: a party seeking fees "must obtain an order determining entitlement before providing a supplemental motion on amount." M.D. Fla. R. 7.01(b) (2025). The entitlement motion must "(1) specif[y] the judgment and the statute, rule, or other ground entitling the movant to the award, (2) state the amount sought or provide[ ] a fair estimate of the amount sought, and (3) include[ ] a memorandum of law." *Id.*

prospective policies. *See Blumberg v. Security First Ins. Co.*, 420 So.3d 1070, 1076 (Fla. Dist. Ct. App. 2025) (holding that the insurance policy incorporated a statutory right to attorney's fees under *Menendez* and the amendment eliminating that right could not be retroactively applied to the policyholder's claim); *Procraft Exteriors, Inc. v. Metro, Cas. Ins. Co.*, 2020 WL 5943845, at *3 (M.D. Fla. May 13, 2020) ("Florida courts have consistently held that statutes limiting the right to recover attorney fees impair a substantive right and do not apply retroactively.").

Here, Plaintiff seeks an award of attorney's fees under section 627.428 because King's policy with Defendant was effective prior to the statute's repeal. (Doc. 147). Defendant objects to this request, asserting that, because this is a third-party bad-faith action, section 627.428 does not apply. (Doc. 150). Plaintiff has the better argument. As the Court has already noted, it is well established that plaintiffs who are assignees of an insured and prevail in third-party bad faith insurance claims are entitled to attorney's fees under section 627.428. Because Plaintiff is King's assignee, she is entitled to attorney's fees under this statute.

As to Plaintiff's request for entitlement to costs, under Rule 54, a prevailing party is entitled to an award of costs incurred unless a federal statute, the Federal Rules of Civil Procedure, or a court provides otherwise. Fed. R. Civ. P. 54(d)(1). Here, Plaintiff is the prevailing party and there is no statute, rule, or court order prohibiting Plaintiff from recovering her costs from Defendant. As such, Plaintiff is entitled to costs.

I.     **CONCLUSION**

Accordingly, it is hereby **ORDERED** that:

(1) Defendant's Renewed and Alternative Motion for New Trial (Doc. 149) is **DENIED**.

(2) Plaintiff's Motion for Entitlement to Attorney's Fees and Costs (Doc. 147) is

   **GRANTED**.

(3) Plaintiff is directed to file a supplemental motion on the amount of its fees and

   costs within forty-five (45) days of this Order if the parties are unable to come to

   an agreement after good-faith conferral.  *See* M.D. Fla. R. 7.01(c).

ORDERED in Tampa, Florida on June 11, 2026.


_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE