UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAUREN NICOLE HINSON,
Individually and as assignee of
Alisha Danielle King,

Plaintiff,

v. CASE NO.: 8:23-cv-01766-TPB-SPF

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

Defendant.
_________________________/

## PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

Plaintiff, LAUREN HINSON, pursuant to Federal Rule of Civil Procedure 11, hereby moves for sanctions to be imposed against Defendant and/or its counsel based on the objectively frivolous arguments presented in Defendant's Motion for Reconsideration of Order Denying Defendant's Rule 50 Motion for Judgment and Granting Plaintiff's Motion for Entitlement to Attorney's Fees (Doc. 156), and states as follows:

## I. INTRODUCTION

On July 9, 2026, Progressive filed its motion seeking reconsideration of the Court's Order denying Progressive's Rule 50 Motion for Judgment and granting Plaintiff's Motion for Entitlement to Attorney's Fees. As the sole basis for reconsideration of the Order denying Progressive's Rule 50 Motion for Judgment, Progressive pointed to a recent unpublished opinion from the Eleventh Circuit, which is not binding precedent and does not constitute controlling law. Likewise,

as support for reconsideration of the Order granting Plaintiff's Motion for Entitlement to Attorney's Fees, Progressive insists that cause of action for bad faith is not a contractual claim but rather "is a tort claim for alleged failure to settle," which is contrary to nearly a century of Florida law directly on point. Because Progressive's motion for reconsideration was objectively frivolous in view of the facts or law, and because Progressive should have been aware of that frivolousness had it conducted a reasonable inquiry, Rule 11 sanctions are appropriate, including but not limited to the reasonable attorney's fees and other expenses incurred in preparing the opposition memorandum.

## II. MEMORANDUM OF LAW

### A. Rule 11

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010); *see also Massengale v. Ray,* 267 F.3d 1298, 1302 (11th Cir. 2001) (The goal of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.")

"Sanctions are appropriate: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (citation omitted).

A two-step inquiry is involved in the decision to impose Rule 11 sanctions, with the court asking "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir. 1998). Thus, the standard for gauging whether a claim is frivolous or meritless is an objective one, "[h]ence courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir. 2003); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) ("Both inquiries measure attorney conduct under an objective reasonably competent attorney standard."(Tjoflat, J., concurring in part).

"A legal claim is frivolous if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change existing law." *Id.* (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only patently frivolous evidence is offered to support factual contentions, sanctions can be imposed." *Thompson*, 610 F.3d at 665 (citations omitted).

After concluding "that either the factual or legal contentions are frivolous, the question becomes whether the attorney should have known they were frivolous." *Id.* The court asks "what was known or reasonably knowable when the

paper was 'present[ed] to the court.' " *Id.* (quoting Fed. R. Civ. P. 11(b)). "Measured objectively, if a reasonable investigation would have revealed the error to a reasonably competent attorney, then sanctions can be imposed; if not, then sanctions cannot be imposed." *Id.* "The reasonableness of the inquiry turns on the totality of the circumstances, including, for example, the time available for investigation and whether the attorney had to rely on the client, another member of the bar, or others." *Id.*

"Rule 11(b)(1) sanctions are appropriate when an attorney or party presents a paper for an improper purpose. Improper purpose is often inferred from circumstantial evidence." *Id.* at 665-66. "A 'motive to harass' can also be inferred from an attorney's filing of factually or legally frivolous claims. *Id.*

"A Rule 11(b)(2) or (b)(3) violation--bringing a legally or factually frivolous claim--is often probative of a Rule 11(b)(1) improper purpose violation." *Id.* at 664. If a filing violates Rule 11(b), the Court may impose "an appropriate sanction" on the attorney responsible for the violation. *See* Fed. R. Civ. P. 11(c)(1). The sanction may include an award of attorney's fees and other expenses directly resulting from the violation. *See* Fed. R. Civ. P. 11(c)(4).

**B. Sanctions are appropriate based on the objectively frivolous legal arguments advanced in support of Progressive's Motion for Reconsideration**

As set forth in Plaintiff's Opposition Memorandum, "[r]econsideration of a court's previous order is an extraordinary remedy and, thus, is a power which should be used sparingly. *Dunn-Fischer v. District School Bd. Of Collier County*,

2014 WL 905468 at *1 (M.D. Fla. Mar. 6, 2014) (Steele, J.) (citing *American Ass'n of People with Disabilities v. Hood*, 278 F.Supp.2d 1337, 1339 (M.D. Fla. 2003)). "A motion for reconsideration should raise new issues, not merely readdress issues litigated previously." *Id.* (quoting *PaineWebber Income Props. Three Ltd. P'ship v. Mobil Oil Corp.*, 902 F.Supp. 1514, 1521 (M.D. Fla. 1995)).

"Courts have 'delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; [and] (3) the need to correct clear error or prevent manifest injustice." *Id.* (quoting *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994). "Unless the movant's arguments fall into one of these categories, the motion must be denied." *Id.*

The arguments advanced by Progressive in support of its motion for reconsideration are objectively frivolous, and Progressive should have been aware of that frivolousness had it conducted a reasonable inquiry. As such, Rule 11 sanctions are appropriate.

**(1) Order Denying Progressive's Rule 50 Motion**

Progressive has previously filed a motion for summary judgment (Doc. 42), a motion for leave to file a renewed motion for summary judgment (Doc. 99), a motion for judgment as a matter of law (Doc. 132), and a renewed motion for judgment as a matter of law (Doc. 149), all of which insisted there was no bad faith as a matter of law. This Court, and previously District Judge Barber, have

consistently rejected Progressive's argument. (Doc. 64; Doc. 112; Doc. 135-136; and Doc. 154)

Notwithstanding all of these decisions, not to mention the jury's verdict, Progressive recently alleged that reconsideration of the Court's Order denying its Rule 50 Motion was necessary due to an intervening change in controlling law. However, as support, Progressive relied exclusively on the recent unpublished decision from the Eleventh Circuit in *Grimes v. State Farm Automobile Ins. Co.*, No. 25-cv-13745, 2026 WL 1678225 (11th Cir. June 10, 2026).

Progressive's reliance on an unpublished decision to satisfy the "change in controlling law" requirement is objectively frivolous, and it should have been aware of that frivolousness had it done a reasonable inquiry. Indeed, contrary to the argument advanced by Progressive, courts in the Eleventh Circuit have consistently held that an unpublished decision does not constitute an intervening change in controlling law. *See, e.g., Ponamgi v. Safeguard Services, LLC*, Case No. 11-cv-62119, 2013 WL 12080163 at *1-2 (S.D. Fla. May 30, 2013) (denying a motion for reconsideration on the grounds of an intervening change in controlling law where the movant relied on an unpublished decision and explaining "that unpublished opinion does not constitute controlling law."); *Jane Doe K.R. v. Choice Hotels, WHG SU Delegates, LLC,* Case No. 23-cv-1012-JSS-LHP, 2024 WL 4273374 (M.D. Fla. Oct. 2, 2024) (denying motion for reconsideration, in part, because an "unpublished opinion does not constitute controlling law"); *United States ex rel. Raven v. Georgia Cancer Specialists I, P.C.*, No. 1:11-CV-00994-CAP,

2020 WL 10983945, at 3 (N.D. Ga. May 29, 2020) ("[T]he [decision on which the party moving for reconsideration relies] is unpublished .... Therefore, [it does not] constitute a change in controlling law. On th[is] ground[ ] alone, the court could deny [movant's] motion for reconsideration."); *Fehrle v. Walp*, No. 4:22-cv-232, 2025 WL 3533939, at *4 (S.D. Ga. Jan. 14, 2025) (rejecting the argument that an unpublished opinion could constitute a change in controlling law for purposes of reconsideration).

Progressive clearly understood that an unpublished decision does not constitute controlling law. Indeed, in a footnote, Progressive conceded that the opinion was unpublished and, therefore, was not binding precedent. Elsewhere in its motion, Progressive described the grounds supporting reconsideration as an "intervening change in persuasive authority," which is a tacit admission that the unpublished decision is not controlling law. But rather than addressing this issue or the cases mentioned above, all of which show that an unpublished decision is not controlling authority, Progressive simply opted to file its motion without setting forth sufficient grounds that would support reconsideration.

Ultimately, Progressive's contention that an unpublished opinion from the Eleventh Circuit—particular one that applies well-settled law to a unique set of facts—is an intervening change in controlling law requiring reconsideration is objectively frivolous. Progressive either failed to conduct a reasonable inquiry prior to filing its motion, or it simply chose to disregard the legal authority

analyzing this issue. Either way, Progressive should have known of the frivolousness of its argument, and sanctions under Rule 11 are appropriate.

**(2) Order Granting Plaintiff's Entitlement to Attorney's Fees**

Progressive also insisted that reconsideration of the Court's Order granting Plaintiff's Motion for Entitlement to Attorney's Fees was required to correct "clear error." As support, Progressive attempted to distinguish the authority cited in the Court's Order by insisting that "this action is a bad faith claim, not a contractual claim," relying exclusively on two decisions that used the term "extra contractual" when describing bad faith actions. (Doc. 156 at p. 7-8) (citing *Citizens Prop. Ins. Corp. v. Manor House, LLC*, 313 So. 3d 579, 582 (Fla. 2021) and *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 2490450, at *6 (S.D. Fla. June 18, 2008)). Based solely on these cases, Progressive insisted that "this is a tort claim for alleged failure to settle." (Doc. 156 at p. 8). As it explains further, "because this is not a contractual dispute, the statutes in effect at the time of the contract inception have no bearing on this litigation." (Doc. 156 at p. 8-9).

To the extent Progressive's claim of "clear error" hinges on its theory that a bad faith action is a tort action, not a contractual action, Progressive has overlooked nearly a century of authority that says otherwise. The Florida Supreme Court first considered this issue in *Auto Mut. Indem. Co. v. Shaw*, 184 So. 852, 859 (Fla. 1938). In holding that an "insurer must act in good faith toward [its] assured in its effort to negotiate a settlement," the Court concluded that "duty [arose] not under the terms of the contract strictly speaking, but because of and flowing from"

the right of the insurer by contract "to take charge of the defense of [the] claim." *Id.*

Several decades later, the Florida Supreme Court further solidified the classification of bad faith claims as contract actions in *Nationwide Mut. Ins. Co. v. McNulty*, 229 So. 2d 585 (Fla. 1969), which explained that an action for bad faith "is bottomed on the contract, and that the nature of an action thereon is *ex contractu*[1] rather than in tort." *Id.* at 585-586. As the Court further explained, "[t]he fact that the proofs offered to establish an insurer's bad faith in this connection may include or consist of showing an act of negligence will not take the cause of action out of the contract category." *Id.* at 586.

This has been consistently reaffirmed by the Florida Supreme Court and the Eleventh Circuit. *Gov't Employees Ins. Co. v. Grounds*, 332 So. 3d 13, 14-15 (Fla. 1976) (reaffirming the *ex contractu* classification and expunging lower court language characterizing bad faith as a "hybrid" tort-contract action); *Venn v. St. Paul Fire & Marine Ins. Co.,* 99 F.3d 1058, 1067 at n.12 (11th Cir. 1996) (observing that "although most states treat an action for refusal to settle as a tort action or combination of tort and contract, Florida consistently has treated it as purely *ex contractu*"); *Baranowski v. Geico Gen. Ins. Co.*, 719 Fed. Appx. 933, 935 (11th

[1] EX CONTRACTU, Black's Law Dictionary (12th ed. 2024) (meaning "[a]rising from a contract").

2018) (examining Florida decisions and holding that bad faith action constitutes action arising out of a contract instead of action in tort).

Contrary to the theory espoused by Progressive, the fact that several courts may have described bad faith actions as "extra-contractual" does not mean that a bad faith action is a tort action. Courts have used the term "extra contractual" when attempting to explain that the insurer's duty of good faith is not found in the express terms of the policy. Rather, it is a duty imposed by law, either through common law implication (in the third party context) or by statute (in the first party context). *Decamp v. State Farm Fire & Cas. Ins. Co.*, 572 F. Supp. 3d 1241, 1256 (M.D. Fla. 2021) (explaining that an action for bad faith is extra contractual in nature because it "relates to the duties of an insurer as defined by statute, not the express terms of the contract"). Courts have also used the term "extra contractual" when explaining that the damages recoverable in a bad faith action go beyond what the contract itself expressly provides. *Citizens Prop. Ins. Corp. v. Manor House, LLC*, 313 So. 3d 579, 582 (Fla. 2021) (explaining that "extra-contractual, consequential damage are not available in a first-party breach of insurance contract action because the contractual amount due to the insured is the amount owed pursuant to the express terms and conditions of the policy.").

To the extent that Progressive accused the Court of "clear error" by raising an argument that is contradicted by nearly a century of Florida authority, this argument was objectively frivolous and Progressive should have been aware of that

frivolousness had it conducted any reasonable inquiry. Again, Rule 11 sanctions are appropriate.

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court impose sanctions under Rule 11 against Progressive and/or its counsel, including but not limited to attorney's fees and costs incurred in preparing the opposition memorandum, based on the frivolous arguments asserted in Progressive's Motion for Reconsideration (Doc. 156), and any such other relief that the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**VAKA LAW GROUP**

*/s/ Robert C. Hubbard*

**George A. Vaka, Esquire**
Florida Bar No. : 374016
**Robert C. Hubbard, Esquire**
Florida Bar No.: 98996
gvaka@vakalaw.com
rhubbard@vakalaw.com
rtiernan@vakalaw.com
777 S. Harbour Island Blvd.,
Suite 300
Tampa, Florida 33602
Tel: (813) 549-1799
Fax: (813) 549-1790

## Certificate of Compliance with 21-Day Safe-Harbor Period

I HEREBY CERTIFY that on July 14, 2026, the foregoing document was electronically served via e-mail to designated counsel for Progressive in accordance with the procedure set forth in Rule 11(c)(2), and Plaintiff has agreed not to file or present to the Court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately correctly within 21 days after service or within another time the court sets.

*/s/ Robert C. Hubbard*
**Robert C. Hubbard, Esq.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 6, 2026, the foregoing document was electronically served via e-mail to all designated parties.

*/s/ Robert C. Hubbard*
**Robert C. Hubbard, Esq.**