UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAUREN NICOLE HINSON,
Individually and as assignee of
Alisha Danielle King,

Plaintiff,

v. CASE NO.: 8:23-cv-01766-TPB-SPF

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

Defendant.
___________________________/

**PLAINTIFF'S SUPPLEMENTAL MOTION TO DETERMINE AMOUNT OF ATTORNEY'S FEES AND EXPENSES**

Plaintiff, LAUREN HINSON, pursuant to Local Rule 7.01 and this Court's Order Determining Entitlement (Doc. 154), files her Supplemental Motion to Determine Amount of Attorney's Fees and Expenses, and in support states as follows:

## INTRODUCTION

Plaintiff is entitled to attorney's fees and expenses under section 627.428, Fla. Stat. (Doc. 154 at 15-16) In this Supplemental Motion, Plaintiff seeks an award of reasonable attorney's fees in accordance with the opinions of Plaintiff's attorney's fees expert, Ronald Kammer, Esquire. More specifically, it is Mr. Kammer's opinion that Plaintiff's reasonable attorney's fees consist of a total of 296.5 hours incurred by Attorney George Vaka at the rate of $825/hour, as well as 485.8 hours incurred by Attorney Robert Hubbard at the rate of $625/hour,

resulting in a total Lodestar amount of **$548,237.50**. In addition, it is Mr. Kammer's opinion that a contingency risk multiplier of 2.0 to 2.20 is appropriate.

Ultimately, consistent with the higher end of Mr. Kammer's multiplier range, Plaintiff respectfully requests an award of reasonable attorney's fees in the amount of **$1,206,122.50.** In support of this Supplemental Motion, Plaintiff has attached the following materials:

- Declaration of George A. Vaka, Esq. – Exhibit 1.
- Declaration of Robert C. Hubbard, Esq. - Exhibit 2
- Report of Ronald L. Kammer – Exhibit 3

The Vaka Law Group's complete billing records are attached as Exhibit C to the Declaration of George A. Vaka, Esq.[1] Plaintiff also requests an award of expenses in the amount of **$8,303.93**, consistent with the Bill of Costs previously submitted in the case. (Doc. 148)

## BACKGROUND

1. By Order dated June 11, 2026, this Court denied Progressive's post-trial motions and concluded that Plaintiff was entitled to recover attorney's fees under section 627.428, Fla. Stat. (Doc. 154 at 15-16)

[1] The billing records consist of two spreadsheets. The first consists of all time entries from the inception of the case through June 11, 2026, which is the date of the Court's Order determining Plaintiff's entitlement to attorney's fees. The second consists of all time entries relating to work performed in the trial court, primarily relating to Progressive's Motion for Reconsideration. To the extent there were some time entries that related to work performed on the appeal, or litigating the amount of attorney's fees, those entries were redacted.

2. Following receipt of the Court's Order, counsel for Plaintiff engaged a fee expert, Ronald Kammer, Esq., to provide an opinion regarding the reasonable amount of attorney's fees, including whether application of a contingency fee multiplier is appropriate.

3. Upon receipt of Mr. Kammer's opinions, counsel for Plaintiff provided this information to Progressive via emails dated August 5, 2026 and August 6, 2027, in a good faith attempt to confer and possibly resolve the issues for the Court.

4. However, as the Court is aware, Progressive has filed a motion seeking reconsideration as to the Court's Order determining Plaintiff's entitlement to attorney's fees, which remains pending before the Court.

5. To the extent that Progressive is still in the early stages of evaluating Plaintiff's time records and continues to dispute Plaintiff's entitlement to attorney's fees, the parties agreed they cannot resolve any dispute as to the reasonableness of the hourly rates, the total number of hours, or the application of a contingency risk multipliers at this time. However, the parties have agreed to confer again regarding these issues prior to the deadline for Progressive to file its response in opposition to Plaintiff's Supplemental Motion.

6. To the extent that the parties are able to reach an agreement or narrow the issues, Plaintiff will promptly notify the Court.

**MEMORANDUM OF LAW**

In this diversity case, Florida law governs the determination of attorneys' fees. *See Prime Ins. Syndicate, Inc. v. Soil Tech Distribs., Inc.*, 270 Fed.Appx. 962,

963 (11th Cir. 2008) ("We have consistently recognized that in diversity cases a party's right to attorney's fees is determined by reference to state law.").

Plaintiff will begin by addressing the identity, experience and qualifications for each timekeeper for whom fees are sought. Next, Plaintiff will address the amount sought, including the Lodestar amount and the application of a multiplier.

## I. Identity, Experience, and Qualifications for Each Timekeeper for Whom Fees are Sought.

### A. George A. Vaka[2]

George A. Vaka, Esquire is lead counsel for Plaintiff in this action. Mr. Vaka, who is asking for $825 per hour, has been licensed since 1983, has been rated AV Preeminent, has been recognized as one of the "Best Lawyers in America" for more than 20 years, including as "Lawyer of the Year" in Insurance Law on multiple occasions, a fellow of the American College of Coverage Counsel, and member of the National Trial Lawyers and President of the Top 10 Bad Faith Lawyers Section on two different occasions. He has also been Board Certified in Appellate Practice since 1994.

In this action, Mr. Vaka served as lead counsel at trial, conducted multiple depositions, and assisted in the development of case strategy, the drafting of substantive motions (and responses), and preparation of other pre-trial filings. Mr. Vaka worked a total of 316.6 hours in prosecuting this action against Progressive. At an hourly rate of $825, which is the customary rate that is charted

[2] *See* Declaration of George A. Vaka, Esq., attached as **Exhibit "1."**

to hourly clients, the total amount of attorney's fees for Mr. Vaka's time is $261,195.00.

**B. Robert C. Hubbard**[3]

Robert C. Hubbard, Esquire is co-counsel for Plaintiff in this action. Mr. Hubbard, who is asking for $625 per hour, has been licensed since 2012. Prior to joining The Vaka Law Group, Mr. Hubbard was an Associate Attorney (2012-2016) and Partner (2016-2019) at Cole, Scott & Kissane, P.A. where he represented insurance companies at the trial and appellate level in hundreds of complex coverage and bad faith disputes involving first and third-party claims.

Mr. Hubbard joined The Vaka Law Group in 2019 where he has primarily focused his practice on representing policyholders in disputes against insurers involving matters of insurance coverage and/or bad faith, whether in active litigation or as personal counsel. Mr. Hubbard also serves as co-counsel in complex cases and provides trial support and other assistance relative to matters involving insurance coverage and potential appellate issues. Mr. Hubbard has also handled a number of complex bad faith disputes involving an insurer's handling of high-exposure claims involving multiple claimants or multiple insureds.

In this action, Mr. Hubbard conducted all written discovery and nearly all depositions, prepared fact and expert witnesses, prepared all pleadings, motions, and Rule 26 disclosures, and performed all other pretrial phases of litigation. Mr. Hubbard worked a total of 505.1 hours on this case. At an hourly rate of $625,

---

[3] *See* Declaration of Robert C. Hubbard, Esq., attached as **Exhibit "2."**

which is the customary rate that is charged to hourly clients, the total amount of attorney's fees for Mr. Hubbard's time is $315,687.50.

## II. Amount Sought

### A. Lodestar

District courts use the "lodestar" method to determine reasonable attorney's fees under section 624.155, Florida Statutes. *See Wendell v. USAA Cas. Ins. Co.*, No. 8:08-cv-536-T-23eaj, 2008 WL 1971451, at *1 (M.D. Fla. July 8, 2009); *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1146 (Fla. 1985) (adopting the federal lodestar approach to determining reasonable attorneys' fees). The lodestar method consists of determining the reasonable hourly rate and then multiplying that number by the number of hours reasonably expended by counsel. *See Loranger v. Stierheim*, 10 F. 3d 776, 781 (11th Cir. 1994).

The Eleventh Circuit defines a "reasonable hourly rate" as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* Further, "the 'relevant market' the Court must reference in deriving this value is 'the place where the case is filed.'" *Sos v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 560814 at *21 (11th Cir. 2023) (explaining that "[b]ecause Sos filed this action in the middle district of Florida, the relevant market here is Central Florida.").

When establishing the reasonable hourly rate, the Court should also consider the factors set forth in Rule Regulating the Florida Bar 4- 1.5(b)(1). "The second component of the lodestar method requires the Court to determine the amount of hours reasonably expended by Plaintiff's attorneys." *Jin Zhi Star Lt. v. American Zurich Ins. Co.*, No. 08-61191-CIV, 2009 WL 2899913, at *6 (S.D. Fla. Sept. 9, 2009). "[T]he party opposing the fee application must satisfy his obligation to provide specific and reasonably precise objections concerning hours that should be excluded." *Id.* (citing *ACLU of Georgia v. Barnes*, 168 F. 3d 423, 427 (11th Cir. 1999)). "In the final analysis, however, 'exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court.'" *Id.* (citing *Norman*, 836 F.2d at 1301).

As explained above, Plaintiff counsels' complete billing records for this case are attached as Exhibit C to the Declaration of George A. Vaka, Esq. (Ex. 1C) The billing records identify the hours reasonably expended by each timekeeper, a description of the tasks done during those hours, and the hourly rates claimed for each timekeeper. (Ex. 1C)

Plaintiff retained fee expert, Ronald Kammer, Esq., to opine on the reasonableness of the attorneys' fees being sought, both as to hourly rates and time billed, as well as the application of a lodestar multiplier. (Ex. 3) Mr. Kammer, who has extensive experience representing insurance companies and testifying as an expert on a range of issues, including reasonableness of attorney's fees, explained his methodology in more detail in his Report. (Ex. 3 at p. 3) In order to arrive at

his opinions, he reviewed Plaintiff counsel's fee and costs records as well as the underlying court file. (Ex. 3 at p. 3) He also reviewed discovery and other materials that were not part of the court file, and discussed the case and billing entries with the involved attorneys to get more information, if needed. (Ex. 3 at p. 3) Where the work product was available, he performed a side-by-side comparison of the work product and time charged. (Ex. 3 at p. 3) Where it was not available, he relied on the billing description, his calls with counsel, and his experience as a lawyer, having reviewed and approved tens of thousands of bills during his career. (Ex. 3 at p. 3)

Mr. Kammer applied the same methodology he used, and which was approved by the Third District Court of Appeals, in *Certain Underwriters at Lloyd's London v. Candelaria,* 339 So. 3d 463 (Fla 3rd DCA 2022) ("the only number for which there is competent, substantial evidence [was] adduced by the defendant's fee expert following a line-by-line accounting of the compensable hours"). (Ex. 3 at p. 3) Mr. Kammer's worksheets, which show his side-by-side comparison and notes, are attached to his Report. (Ex. 3 at p. 11-37)

In arriving at a reasonable hourly rate, Mr. Kammer considered his experience, the experience of the lawyers seeking fees, the venue in which the case was pending, the Rowe factors, the knowledge of rates charged by other firms who handle bad faith cases and generally available publications that law firms, courts and other fee experts rely upon regarding rates law firms charge, including the Real Rate Report. (Ex. 3 at p. 4-6) He also considered the rates charged by the Vaka

Law Group for their hourly clients since those rates also reflect the market rate, along with some prior court orders awarding fees to Mr. Vaka. (Ex. 3 at p. 5) Based on the foregoing, it is Mr. Kammer's opinion that the rates customarily charged by the Vaka Law Group ($825/hr for Mr. Vaka and $625/hr for Mr. Hubbard) are reasonable. (Ex. 3 at p. 6)

As set forth in his Report, Mr. Kammer did find certain time entries that were excessive, for administrative tasks, and for other work that was not recoverable, and those reductions are reflected on his worksheets. (Ex. 3 at p. 6-7) Ultimately, Mr. Kammer determined that **296.5** hours of Mr. Vaka's time and **485.8** hours of Mr. Hubbard's time were reasonable. (Ex. 3 at p. 6-7)

Based on Mr. Kammer's opinions concerning the reasonable hourly rates[4] and the number of hours reasonably expended by each timekeeper, the following table represents the Lodestar amount:

---

[4] The application of current hourly rates, rather than historic billing rates, is appropriate. *See Florida Dept. of Agric. & Consumer Svcs. v. Bogorff*, 132 So. 3d 249, 257 (Fla. 4th DCA 2013) (trial court's use of current hourly rates, rather than historic rates, was appropriate); *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1096 (5th Cir. 1982) ("We note, however, that the prevalent practice today is to use current rates rather than historic rates and thus to compensate counsel for inflation and delay in receipt of payment."); *Solutia, Inc. v. Forsberg*, 221 F.Supp.2d 1280, 1289 (N.D. Fla. 2002) ("[W]hen there is a delay [in payment] the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." *quoting Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir.1988)); *FIGA v. R.V.M.P. Corp.*, 681 F. Supp. 806, 809 at n.1 (S. D. Fla. 1988) ("The court believes that current rates should be used to value the services provided here. This case is currently six years old, and the use of current rates as opposed to historical rates allows an appropriate adjustment for inflation.").

## LODESTAR AMOUNT

| NAME | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| George Vaka | 296.5 | $825/hr | $244,612.50 |
| Robert Hubbard | 485.8 | $625/hr | $303,625.00 |
| **TOTAL** | | | **$548,237.50** |

### B. Continency Risk Multiplier

Plaintiff seeks the application of a contingency risk multiplier consistent with the standards set forth in *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151 (Fla. 1985) and *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990). As an initial matter, Plaintiff's representation agreement in this case was a contingency fee contract which allows for the application of a multiplier. (Ex. 1B) Thus, the Court may properly consider the application of a contingency risk multiplier to the amount of fees reasonably incurred by Plaintiffs in the prosecution of this action. Once the district court arrives at the lodestar figure, it may add to the fee based upon a "contingency risk" factor and the "results obtained." *Rowe*, 472. So. 2d at 1151. The primary rationale for the contingency risk multiplier is to "provide access to competent counsel for those who could not otherwise afford it." *Bell v. U.S.B. Acquisition Co.*, 734 So. 2d 403, 411 (Fla. 1999); *Joyce*, 228 So. 3d at 1131 ("In those cases, we authorized the use of a multiplier to promote access to courts by encouraging lawyers to undertake representation at the inception of certain cases.");

The Fifth District Court of Appeals' decision in *Federated Nat'l Ins. Co. v. Joyce*, 179 So. 3d 492 (Fla. 5th DCA 2015), is relevant to the analysis of the amount

to award as a contingency risk multiplier. In *Federated v. Joyce*, the Fifth District stated the following:

a. "This was not a complicated case." *Id.* at 494.
b. "There were no esoteric legal issues or factual disputes to resolve." *Id.*
c. "It only took one phone call for the Joyces to secure counsel." *Id.*

In *Joyce*, the insurer did not even take the case to trial or engage in much discovery:

> [E]arly in discovery, it came to light that the Joyces had actually disclosed the prior claims.
>
> Federated acknowledged the error, and the parties executed a settlement agreement for $23,500, exclusive of attorney's fees.

*Id.* at 493 (footnote omitted). The trial court awarded a 2.0 multiplier based on these facts. *Id.* The Fifth District reversed the trial court's judgment, claiming the case was not appropriate for the application of a multiplier. *Id.*

However, the Florida Supreme Court reversed the Fifth District and explained that *Joyce* was ***exactly*** the kind of case worthy of a multiplier. *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122, 1135 (Fla. 2017). The Florida Supreme Court has repeatedly spoken about the standards for awarding a contingency risk multiplier, most notably in *Rowe*, *supra*; *Quanstrom*, *supra*; *Bell v. U.S.B. Acquisition Co.*, 734 So. 2d 403 (Fla. 1999); and most recently in *Joyce v. Federated*, *supra*. The Florida Supreme Court held:

> [T]he contingency fee multiplier provides trial courts with the flexibility to ensure that lawyers, who take a difficult case on a contingency fee basis, are adequately compensated . . . . Indeed, without the option of a contingency fee multiplier, those with difficult and complicated cases will likely be unable or find it difficult to obtain

> counsel willing to represent them. As we stated in *Bell*, the primary rationale for the contingency fee multiplier is to assist:
>
>> parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis. In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation.
>
> *Bell*, 734 So. 2d at 411. As Justice O'Connor stated in dissent in *Dague*, "in certain circumstances a 'reasonable' attorney's fee should not be computed by the purely retrospective lodestar figure, but also must incorporate a reasonable incentive to an attorney to take the case in the first place." 505 U.S. at 575, 112 S.Ct. 2638 (O'Connor, J., dissenting). . . .
>
> While the attorney for the insurer charges and receives an hourly rate regardless of whether the defense is successful, the insured's attorney bears the risk of never being compensated for the number of hours spent litigating the case. This risk, among other factors, is what entitles the attorney to seek, and the trial court to consider, the application of a contingency fee multiplier.

*Joyce*, 228 So. 3d at 1132-33.

To the extent Progressive attempts to argue that this case does not present "rare and exceptional circumstances" and therefore a contingency risk multiplier is not necessary, this argument was rejected by the Florida Supreme Court. *Joyce*, 228 So. 3d at 1125. It has also been rejected by the Eleventh Circuit. *Sos v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 560814 at *22 (11th Cir. 2023) (explaining that "[t]he decision to award a contingency fee multiplier is within the trial court's sound discretion, and a case need not involve 'rare' or 'exceptional' circumstances to merit one.").[5]

---

[5] Effective March 24, 2023, the Florida Legislature, through HB 837, amended section 57.104, Florida Statutes, and added subsection (2), which created a presumption that a lodestar fee is sufficient and reasonable and stated that the

In bad faith cases, such as this one, the district court must consider the following factors in determining whether a multiplier should be awarded:

> a. Whether the relevant market requires a contingency fee multiplier to obtain competent counsel;
> b. Whether the attorney was able to mitigate the risk of nonpayment in any way; and
> c. Whether any of the factors set forth in *Rowe* are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

*Quanstrom*, 555 So. 2d at 834; Rule Regulating the Florida Bar 4-1.5(b)(1*); see also Joyce*, 228 So.3d at 1133 ("[T]he lodestar amount, which awards an attorney for the work performed on the case, is properly analyzed through the hindsight of the actual outcome of the case, whereas the contingency fee multiplier, which is intended to incentivize the attorney to take a potentially difficult or complex case, is properly analyzed through the same lens as the attorney when making the decision to take the case.").

---

presumption can only be overcome in rare and exceptional circumstances. However, this amendment does not apply to this case. The amendment itself states that it only applies "to causes of action filed after the effective date of this act," and this bad faith action was filed on—not after—March 24, 2023. Moreover, to the extent that the amendment limits the right to recover attorney's fees, Florida courts have consistently held that amendments limiting the right to recover attorney's fees do not apply retroactively and affect only prospective policies. *See Blumberg v. Security First Ins. Co.*, 420 So.3d 1070, 1076 (Fla. 5th DCA 2025) (holding that the insurance policy incorporated a statutory right to attorney's fees under *Menendez* and the amendment eliminating that right could not be retroactively applied to the policyholder's claim); *Procraft Exteriors, Inc. v. Metro, Cas. Ins. Co.*, No. 2:19-CV-883, 2020 WL 5943845, at *3 (M.D. Fla. May 13, 2020) ("Florida courts have consistently held that statutes limiting the right to recover attorney fees impair a substantive right and do not apply retroactively.").

Once application of the contingency fee multiplier is determined, the following formula is utilized to calculate the amount of the multiplier:

> (1) If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5;
> (2) If the trial court determines that the likelihood of success was approximately even at the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and
> (3) If the trial court determines that success was unlikely at the outset of the case, it may apply a multiplier of 2.0 to 2.5.

*Id.* As explained in his declaration, Mr. Kammer considered the relevant factors and concluded that a multiplier of **2.0 to 2.2** is appropriate. (Ex. 3 at p. 7-9)

Progressive cannot reasonably dispute Mr. Kammer's opinion that success was unlikely at the outset. During case management conferences before Judge Barber, counsel for Progressive repeatedly informed the Court that Progressive was not interested in mediation until after its summary judgment motion was addressed. (Doc. 19, 28) Indeed, at all times during the pendency of this case, Progressive has maintained that no reasonable jury could find that it acted in bad faith. (Doc. 149) Even after receiving the jury's verdict and the Court's Order denying Progressive's post-trial motions, Progressive continues to maintain that there is no bad faith as a matter of law. (Doc. 156)

Unable to dispute that success was unlikely at the outset, it is anticipated that Progressive may simply point to the number of lawyers who handle insurance coverage or even bad faith cases as evidence that the relevant market does not require a multiplier to obtain competent counsel. However, such an argument ignores the complexity of the claims handling analysis and other unique challenges

presented by the facts and circumstances of this case. This was not a straightforward bad faith case arising out of an insurer's failure to accept a policy-limit demand, or a first-party dispute resulting from the insurer's failure to cure its bad faith conduct within 60 days of a civil remedy notice. Rather, this was a more complex case requiring analysis of Progressive's handling of multiple competing claims, a special category of bad faith cases with its own unique case law. Unlike in straightforward bad faith cases, which typically are resolved by the jury under the totality-of-the-circumstances standard, courts have proven to be much more willing to dispose of bad faith cases involving multiple competing claims at the summary judgment stage. *See, e.g., Mesa v. Clarendon Nat'l Ins. Co.*, 799 F.3d 1353 (11th Cir. 2015) (finding no bad faith as a matter of law in action arising out of insurer's handling of multiple competing claims and global settlement strategy); *Montanez v. Liberty Mut. Fire Ins. Co.*, 824 F. App'x 905 (11th Cir. 2020) (same); *Valle v. State Farm Mut. Auto. Ins. Co.*, 394 F. App'x 555 (11th Cir. 2010) (same); *Martinez v. GEICO Casualty Ins. Co.*, 152 F.4th 1323 (11th Cir. 2025) (same); *Grimes v. State Farm Mut. Auto. Ins. Co.*, No. 25-13745, 2026 WL 1678225 (11th Cir. June 10, 2026) (same). While *Martinez* and *Grimes* may have been decided after Plaintiff's counsel already accepted this case, these decisions only further demonstrate the significant risk associated with prosecuting bad faith cases involving multiple competing claims. Given this risk, and the investment in fees and costs required to prosecute the case at least through summary judgment and

potentially trial, Ms. Hinson would have had significant difficulty obtaining competent counsel in the relevant market without the potential for a multiplier.

As Mr. Kammer explained in his report, there is only a subset of coverage lawyers in the State of Florida who litigate bad faith cases, and even fewer that have experience in handling a bad faith case involving multiple claimants that can develop a winning strategy under the facts of this case. (Ex. 3 at p. 4) In his opinion, the Vaka Law Group is one of the very few firms in Florida that were capable of developing the strategy to win this case for their client. (Ex. 3 at p. 4) In addition, Mr. Kammer personally interviewed other bad faith lawyers in Florida, and after considering a brief description of the case, Progressive's Motion for Summary Judgment, and Plaintiff's response, none of the lawyers he interviewed would have accepted the case without a contingency risk multiplier. (Ex. 3 at p. 8); *Levesque v. Gov't Employees Ins. Co.*, Case No. 15-CV-14005, 2022 WL1679132 at *10 (S.D. Fla. Mar. 11, 2022) (finding that a contingency risk multiplier was appropriate, at least in part, based on the plaintiff fee expert's polling of other bad faith lawyers, who said they would not have taken such a case without a potential multiplier); *see also Citizens Prop. Ins. Corp. v. Laguerre*, 259 So. 3d 169 (Fla. 3d DCA 2018) (affirming trial court's application of multiplier where it was supported by expert testimony that a party would have difficulty securing counsel without the opportunity for a multiplier).[6]

[6] Of note, the Third District's opinion in *Citizens Prop. Ins. Corp. v. Laguerre* was authored by Judge Barbara Lagoa, who has since been appointed to the U.S. Court of Appeals for the Eleventh Circuit.

Because the relevant market required a contingency fee multiplier to obtain competent counsel, Plaintiff was not able to mitigate against the risk of nonpayment in any way, as well as consideration of other Rowe factors, including the amount involved, the results obtained, and the type of fee arrangement, Plaintiff respectfully requests the application of a contingency risk multiplier in the range of 2.0 to 2.2 consistent with Mr. Kammer's opinions.

**C. Expenses**

On December 9, 2025, Plaintiff timely submitted a Bill of Costs outlining taxable costs in the amount of **$8,303.93.** (Doc. 148) Progressive did not respond or object to any of the expenses included in the Bill of Costs.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests an award of attorney's fees consisting of a total of 296.5 hours incurred by Attorney George Vaka at the rate of $825/hour, as well as 485.8 hours incurred by Attorney Robert Hubbard at the rate of $625/hour, resulting in a total Lodestar amount of $548,237.50. Additionally, Plaintiff respectfully requests that the Court apply a contingency risk multiplier of 2.20, resulting in a total award of reasonable attorney's fees in the amount of **$1,206,122.50**. Plaintiff also requests an award of expenses in the amount of **$8,303.93**, consistent with the Bill of Costs previously submitted in the case. (Doc. 148)

**Local Rule 3.01(g) Certification:** As set forth above, the undersigned conferred with counsel for Progressive, Jenna Worden, Esq., via emails dated

August 5, 2026, August 6, 2026, and August 7, 2026, and is authorized to represent that Progressive objects to the relief requested herein. However, the parties have agreed to confer again regarding the issues raised in this motion prior to the deadline for Progressive's response, and if the parties reach an agreement as to any issue, counsel for Plaintiff will promptly notify the Court.

Respectfully submitted,

**VAKA LAW GROUP**

*/s/ Robert C. Hubbard*
**George A. Vaka, Esquire**
Florida Bar No. : 374016
**Robert C. Hubbard, Esquire**
Florida Bar No.: 98996
gvaka@vakalaw.com
rhubbard@vakalaw.com
rtiernan@vakalaw.com
777 S. Harbour Island Blvd.,
Suite 300
Tampa, Florida 33602
Tel: (813) 549-1799
Fax: (813) 549-1790

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 10, 2026, the foregoing document was electronically served via e-mail to all designated parties.

*/s/ Robert C. Hubbard*
**Robert C. Hubbard, Esq.**