UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAUREN HINSON,

Plaintiff,

v. Case No. 8:23-cv-1766-SPF

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

Defendant.
_____________________________________/

**ORDER**

Before the Court is Defendant's Motion for Reconsideration of Order Denying Defendant's Rule 50 Motion for Judgement and Granting Plaintiff's Motion for Entitlement to Attorneys' Fees (Doc. 156), Defendant's Motion for Stay of Execution Without Bond (Doc. 157), and Plaintiff's Motion for Sanctions (Doc. 166).

**I. Background**

This Florida insurance bad faith lawsuit arises from an automobile accident that occurred on September 2, 2017, involving non-party Alisha King ("Ms. King"), who was insured under a liability policy through Defendant Progressive American Insurance Company ("Defendant"). (Doc. 81 at 1). The Progressive auto policy provided liability coverage limits in the amount of $10,000 per person and $20,000 per occurrence. (*Id.*). There were four potential claims arising from the subject accident, three of which involved non-parties, including Vanessa Morrell ("Morrell"), Maria Pizarro ("Pizarro"), and Martin Kaman ("Kaman"). (*Id.* at 2). The fourth claim was asserted by Plaintiff Lauren Nicole Hinson ("Plaintiff"). (*Id.*).

On October 24, 2017, Defendant sent out official "non-tender" letters informing the claimants that a global settlement conference would be scheduled for November 28, 2017, to resolve the competing claims. (Doc. 141-16). Two days later, Plaintiff's attorney offered to settle her claim for the $10,000 policy limits, explaining that the offer would remain open until November 10, 2017, and provided Plaintiff's hospital bill which totaled $164,000. (Doc. 141-17). Ultimately, Defendant, with the agreement of Ms. King, rejected Plaintiff's demand in light of the upcoming settlement conference. The global settlement conference took place on November 28, 2017, as planned. (Doc. 128, ¶ 18). At the conference, Defendant resolved Pizarro's claim for $4,800, Morrell's claim for $5,000, and set aside $200 for Kaman. (*Id.* at 3). Defendant also tendered the remaining $10,000 to Plaintiff, but the offer was rejected as Plaintiff had already filed a state court lawsuit against Ms. King. (Doc. 141-42).

Plaintiff's claim resulted in Florida state court litigation against Ms. King, which proceeded to trial in August 2022. (Doc. 128, ¶ 29). A verdict was rendered in Plaintiff's favor in the amount of $801,945.51 and placed twenty-five percent fault on another vehicle, reducing the amount entered against Ms. King to $601,459.13. (*Id.*). On February 10, 2023, a Second Amended Final Judgment was entered that also awarded Plaintiff $112,752.50 in attorney's fees and $22,440.01 in taxable costs related to the state court action. (Doc. 81 at 2). Defendant thereafter tendered its $10,000 bodily injury liability limits to Plaintiff. (*Id.*). Ms. King then assigned her rights under her insurance policy with Defendant to Plaintiff who filed the instant insurance bad faith lawsuit against Defendant pursuant to Florida common law.[1]

[1] The case was originally filed in the Sixth Judicial Circuit Court in and for Pasco County, Florida, on March 24, 2023, and removed to this Court on August 7, 2023.

This case proceeded to trial before a jury that rendered a verdict in Plaintiff's favor. (Doc. 139). Judgment in the amount of $889,857.05 ("Final Judgment") was subsequently entered for Plaintiff and against Defendant. (Doc. 145). Following the trial, this Court denied Defendant's Renewed Motion for Judgement as a Matter of Law (Doc. 149) and granted Plaintiff's Motion for Entitlement to Attorney's Fees (Doc. 147). (*See* Doc. 154). Defendant now seeks reconsideration of both rulings and, in light of its appeal filed with the Eleventh Circuit (Doc. 158), a stay of the execution of the judgment entered against it without bond. (Docs. 156–57). Plaintiff opposes both motions and has filed a Motion for Sanctions in response to Plaintiff's Motion for Reconsideration. (Docs. 160–61, 166).

## II. Motion for Reconsideration

Courts generally recognize three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. *Succullo v. U.S.*, No. 8:16-CV-410-T-36TBM, 2017 WL 6383984, at *2 (M.D. Fla. Oct. 3, 2017). The decision to grant a motion for reconsideration is within the sound discretion of the trial court. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). When presented with a motion to reconsider, however, a court should proceed cautiously, realizing that "in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *United States v. Bailey*, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003), *aff'd*, 419 F.3d 1208 (11th Cir. 2005); *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (explaining that "[f]or reasons of policy, courts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions").

**A. Reconsideration of Denying Judgement as a Matter of Law**

In its motion, Defendant argues that the Court should reconsider its ruling on Defendant's Renewed Motion for Judgment as a Matter of Law in light of the recent unpublished Eleventh Circuit opinion *Grimes v. State Farm Automobile Ins. Co.*, No. 25-13745, 2026 WL 1678225 (11th Cir. June 10, 2026). As an initial matter, the Court notes that new unpublished authority does not constitute an "intervening change in controlling law" justifying reconsideration. *Jane Doe K.R. v. Choice Hotels*, No. 6:23-CV-1012-JSS-LHP, 2024 WL 4373374, at *4 (M.D. Fla. Oct. 2, 2024) (holding that the unpublished opinion cited by the defendant in support of its motion for reconsideration "d[id] not amount to an intervening change in controlling law because an unpublished opinion does not constitute controlling law") (quotations omitted); *Sanders v. Daimler Chrysler Corp.*, No. 3:05 CV 7056, 2010 WL 11565416, at *1 (M.D. Fla. July 20, 2010) ("[T]he issuance of an unpublished [Eleventh] Circuit opinion cannot represent an intervening change in controlling law.") (quotations omitted). Accordingly, Defendant's argument fails at the outset.

Moreover, even if this Court were to accept *Grimes* as a controlling authority, reconsideration is still not warranted. In *Grimes*, the Eleventh Circuit affirmed the district court's order granting summary judgment to the defendant, insurance carrier State Farm, in a similar bad faith action. In doing so, however, the Court did not articulate any new legal standards. Instead, the Court affirmed the district court's application of established bad faith principles to the set of facts before it and concluded that no reasonable jury could find State Farm had engaged in bad faith in attempting to settle the plaintiff's claim. *Grimes*, 2026 WL 1678225, at *2–4. Accordingly, even if *Grimes* were controlling law, it would not change the outcome of the instant matter which is factually distinguishable from *Grimes*. *See Ponamgi v.*

*Safeguard Servs*. LLC, No. 11-62119-CIV, 2013 WL 12080163, at *2 (S.D. Fla. May 30, 2013) (holding that even if the Eleventh Circuit authority cited by Plaintiff was binding rather than persuasive, "the decision did not change the applicable law [because] . . . the Eleventh Circuit merely applied the existing legal framework of the [governing law] to a different set of facts from those in the instant case.").

In *Grimes*, State Farm, at the insistence of its insured, declined to tender $25,000 to one of four claimants in a multi-party car accident who only had $12,947.96 in known medical expenses at the time of the demand. 2026 WL 1678225, at *2. Notably, the policy State Farm insured provided maximum bodily injury coverage of $50,000 per accident. *Id.* at *1. State Farm countered the claimant's demand with an offer of $10,000 before the demand's expiration. *Id.* at *2. The claimant rejected the offer, declined to participate in the matter's upcoming global settlement conference, and initiated suit in state court where she was ultimately awarded $85,204.59 in damages. *Id.* In the subsequent bad faith action against State Farm, the district court found, and the Eleventh Circuit upheld, that State Farm was not liable for bad faith because there was no evidence State Farm did not properly advise its insured during the process. *Id.* at *4.

Here, however, Defendant declined to make any offer in response to Plaintiff's settlement demand despite being in receipt of a medical bill more the fifteen times the sum demanded. (Doc. 141-17). Moreover, as articulated in this Court's prior order, after receiving Plaintiff's settlement demand, Defendant made no further efforts to continue investigation into the claims of the other claimants prior to the demand's expiration and did not move the settlement conference. (Doc. 154 at 11). Based on this record, the Court concluded that there was a legally sufficient evidentiary basis for a reasonable jury to find Defendant acted in bad

faith. In its motion for reconsideration, Defendant fails to establish this decision was contrary to controlling law.

**B. Reconsideration of Entitlement to Attorney's Fees**

Defendant further argues that the Court should reconsider it ruling on Plaintiff's entitlement to attorneys' fees because insurance bad faith claims are not contractual claims. In Defendant's view, the instant matter is "a tort claim for alleged failure to settle" and therefore not subject to the fee provisions of section 627.428, Florida Statutes[2] (Doc. 156 at 8). Notably, the two cases cited by Defendant in support of this position merely make causal reference to bad faith actions as being "extra-contractual" in nature. *See Citizens Prop. Ins. Corp. v. Manor House, LLC*, 313 So. 3d 579 (Fla. 2021) (holding that extra-contractual, consequential damages are not available in a first-party breach of insurance contract action); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 2490450 (S.D. Fla. June 18, 2008) (dismissing the plaintiff's claim for breach of implied warranty of good faith and fair dealing), *report and recommendation adopted*, No. 07-22988-CIV, 2008 WL 2856457 (S.D. Fla. July 24, 2008).

Despite Defendant's contention, "Florida law provides that an action for the bad faith refusal of an insurer to settle a covered claim arises in contract." *Baranowski v. Geico Gen. Ins. Co.,* 719 F. App'x 933, 934 (11th Cir. 2018). As pointed at by Defendant, the Florida Supreme Court considered this issue in *Auto Mut. Indem. Co. v. Shaw*, ultimately holding that an insurer's duty to act in good faith toward its insured to negotiate a settlement arose "not under the terms of the contract strictly speaking, but because of and flowing from" the right of the

[2] As noted in this Court's prior order, section 627.428, Florida Statutes was repealed by the Florida Legislature, effective March 24, 2023. However, the statute does not apply retroactively, and Ms. King's policy was in effect prior to the statute's repeal.

insurer by contract "to take charge of the defense of [the] claim." 184 So. 852, 859 (Fla. 1938) (quotations removed). This holding was reiterated in *Nationwide Mut. Ins. Co. v. McNulty*, where the court noted that an action arising from bad faith "is bottomed on the contract, and that the nature of an action thereon is ex contractu rather than in tort" 229 So. 2d 585, 586 (Fla. 1969). This principle has continued to be upheld by both Florida and federal courts. *Swamy v. Caduceus Self Ins. Fund, Inc.*, 648 So. 2d 758, 760 (Fla. Dist. Ct. App. 1994) ("In Florida, when an insured brings an action against his carrier for failure to settle a third party's claim, the action sounds in contract."); *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1067 n.12 (11th Cir. 1996) ("Although most states treat an action for refusal to settle as a tort action or a combination of tort and contract, Florida consistently has treated it as purely *ex contractu*."); *Baranowski*,719 F. App'x at 934. Accordingly, Defendant has failed to demonstrate a clear error in the Court's determination of entitlement to attorneys' fees justifying reconsideration.

## III. Motion for Stay of Execution Without Bond

Under Rule 62, "after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). However, "[a] bond requirement may be waived in a court's discretion." *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292, 1296 (11th Cir. 1991). "If a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure." *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979). In deciding whether to waive bond, courts in this District commonly consider five factors: (1) the complexity of the collection process, (2) the amount

of time required to obtain a judgment after it is affirmed on appeal, (3) the degree of confidence that the district court has in the availability of funds to pay the judgment, (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money, and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position. *United States v. O'Callaghan*, 805 F. Supp. 2d 1321, 1326 (M.D. Fla. 2011); *Nestor v. Vpc3 Ii, LLP*, No. 8:20-CV-265-CEH-TGW, 2026 WL 194460, at *4 (M.D. Fla. Jan. 26, 2026); *Nestor v. Day*, No. 8:20-CV-265-CEH-TGW, 2025 WL 1181022, at *5 (M.D. Fla. Apr. 23, 2025); *Innovative Healing Sys., LLC v. Mizell Mem'l Hosp., Inc.*, No. 8:25-CV-00048-WFJ-AEP, 2026 WL 1017634, at *1 (M.D. Fla. Apr. 15, 2026).

Here, Defendant requests this Court enter an order staying the execution of the Final Judgment entered against Progressive on November 25, 2026, without bond until the completion of its appeal to the Eleventh Circuit. In support of its position, Defendant maintains that: (1) the collection process will not be complicated due to its prominent net worth and credit rating; (2) payment will not be delayed after the appellate court's determination; (3) this Court should have confidence in its ability to pay the judgment, again due to Defendant's alleged prominent net worth and credit rating; (4) Defendant's ability to pay, as demonstrated by its public filings with the SEC, is so plain, the cost of a bond would be wasteful; and (5) Defendant's financial position is not at issue. (Doc. 157 at 8–10). Notably, when speaking of its financial status in factors one, three, and five, Defendant references filing an affidavit to support these assertions but has failed to do so. Similarly, Defendant did not attach as an exhibit the SEC filings discussed in factor four. Accordingly, the Court finds that Defendant has failed to establish financial ability justifying a stay without bond. *See*

*Williamson v. TransUnion LLC*, No. 3:24-CV-43-WWB-PDB, 2026 WL 1262027, at *3 (M.D. Fla. May 8, 2026) (declining to waive bond where the plaintiff's motion provided "a wholly incomplete picture of his finances"); *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988) (granting the City of Chicago's motion to stay execution of a judgement against it without bond where the City properly supported its motion with affidavits establishing $484 million in available funds). Notwithstanding, Defendant's motion is granted to the extent that it shall have thirty days to obtain bond.

**IV. Motion for Sanctions**

Under Rule 11, a district court may award sanctions when a party: (1) files a pleading that has no reasonable basis; (2) files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) files a pleading in bad faith for an improper purpose. *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001). "The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quoting 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 11.03 (3d ed. 2010)). "Reasonableness under the circumstances" is the standard for testing conducting under Rule 11. *United States v. Milam*, 855 F.2d 739, 743 (11th Cir. 1988) (quotations removed). To determine "reasonableness under the circumstances", courts employ a two-step inquiry: "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Peer*, 606 F.3d at 1311 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001)); *see also In re Off. of Alabama Att'y Gen.*, No. 21-13514, 2023 WL 129438, at *3 (11th Cir. Jan. 9, 2023).

However, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Lynch v. Filice*, No. 2:24-CV-340-SPC-NPM, 2025 WL 417688, at *1 (M.D. Fla. Feb. 6, 2025) (quoting *Mason Classical Acad., Inc v. Arnn*, No. 2:22-CV-513-JLB-NPM, 2023 WL 6196855, at *5 (M.D. Fla. Sept. 22, 2023)). Moreover, "a motion for sanctions is not the appropriate vehicle to address the legal sufficiency of a party's position." *Harris v. Gualtieri*, No. 8:25-CV-2172-KKM-AAS, 2025 WL 4033352 (M.D. Fla. Nov. 17, 2025), *report and recommendation adopted*, No. 8:25-CV-2172-KKM-AAS, 2025 WL 3492806 (M.D. Fla. Dec. 5, 2025).

In response to Defendant's Motion for Reconsideration, Plaintiff has filed a Motion for Sanctions. In her motion, Plaintiff maintains that sanctions pursuant to Rule 11 are appropriate because the legal arguments advanced in Defendant's Motion for Reconsideration are "objectively frivolous." (Doc. 166 at 2). Plaintiff therefore requests this Court impose sanctions, including but not limited to, payment of Plaintiff's attorneys' fees for preparing her response in opposition to Defendant's motion.

However, the crux of Plaintiff's argument is that Defendant relied on unpersuasive and inaccurate legal authority in moving for reconsideration. Though it is fair to characterize the arguments in Defendant's motion for reconsideration as weak and unpersuasive, this is not an adequate basis for Rule 11 sanctions. Indeed, "Rule 11 sanctions are not appropriate . . . merely because the pleader's view of the law is incorrect." *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989). Accordingly, if this Court were to impose Rule 11 sanctions based on the arguments presented here, it would have a chilling effect on parties seeking justice or lawyers crafting legal theories, even unpersuasive ones, that might otherwise have some merit. *See, e.g., Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) ("[T]he purpose of Rule 11 is

to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression."); *White v. Brenner*, No. 6:10-CV-134-ORL-28, 2010 WL 5559220, at *4 (M.D. Fla. Dec. 15, 2010), *report and recommendation adopted*, No. 6:10-CV-134-ORL-28, 2011 WL 65744 (M.D. Fla. Jan. 10, 2011) ("[T]he Court applies an objective reasonableness standard in terms of what was and should have been known at the relevant time, keeping in mind that Rule 11 should not have a chilling effect on zealous or novel arguments.")

## V. Conclusion

Accordingly, it is so ORDERED:

1. Defendant's Motion for Reconsideration of Order Denying Rule 50 Motion for Judgement and Granting Plaintiff's Motion for Entitlement to Attorneys' Fees (Doc. 156) is **DENIED**.
2. Defendant's Motion for Stay of Execution Without Bond (Doc. 157) is **GRANTED** to the extent that Defendant shall have until September 18, 2026, to obtain bond and is **DENIED** in all other respects.
3. Plaintiff's Motion for Sanctions (Doc. 166) is **DENIED**.

**ORDERED** in Tampa, Florida on August 19, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE